467 So.2d 675 (1985)
Eleanor Harriett RUDDER
v.
Clifford Otto RUDDER, Sr.
No. 55505.
Supreme Court of Mississippi.
April 10, 1985.
*676 Clifton S. Gaddis, Hattiesburg, for appellant.
Rex K. Jones, Hattiesburg, for appellee.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
Clifford Rudder filed a complaint in the Chancery Court of Forrest County for divorce on the ground of habitual cruel and inhuman treatment. His wife Eleanor Rudder filed an answer and cross-complaint for divorce on the same ground; she also prayed for custody of the parties' minor child, use and possession of certain personal property, and alimony. The court found Mrs. Rudder was entitled to a divorce and the custody of the child. Regarding child support and alimony, the court found,
The minor child of the parties is receiving the sum of $227.00 per month in social security payments and that said sum shall be considered as child support and in addition thereto, that the plaintiff [Clifford Rudder] shall pay to the defendant [Eleanor Rudder] the sum of $100.00 per month for additional child support ... The court also finds that the defendant shall receive any income or dividend received from any investments in the name of the child to be used as child support.
The court continued,
That the defendant is receiving social security payments in the amount of $227.00 per month and shall continue to draw social security in that amount until the child is 18 years of age and that said amount shall be considered as alimony.
The issues on this appeal are whether the court was manifestly wrong in failing
I. To award Mrs. Rudder a reasonable monthly allowance of alimony, and a reasonable lump sum alimony; and
II. To award a sum certain for child support.
The parties were married in 1969 and separated in February 1983. They have a daughter, Beverly, who was born in 1976.
Since Rudder does not contest the award of a divorce to Mrs. Rudder, we do not recite the particulars of his acts of cruel and inhuman treatment. However, we observe *677 the evidence supports a divorce to Mrs. Rudder on that ground.
We turn now to the question of Rudder's ability to pay alimony and child support. Rudder, who was 66 at time of trial, testified that his total monthly income was $702.51, representing a $530.00 social security payment and $172.51 from a teachers pension plan.
However, other evidence casts much doubt, in our opinion, on Rudder's assertion that he had no other source of income. First, a financial statement signed by Rudder on April 27, 1982, indicated he and his wife had an annual income of $59,140.00 and a net worth of $550,100.00, the bulk of which was in oil leases, stocks, bonds, and real estate. Another financial statement dated February 24, 1983, approximately three weeks after the separation, revealed a monthly income of $3,202.64 per month.
After his wife left the marital residence, Rudder made several transactions which decreased his income and net worth. First, he transferred his income producing oil and gas properties into a corporation called Relco which he then sold on credit to his three children from a previous marriage. Immediately after the sale he forgave the debt.
Dwight Hickman, a Vice President of South Mississippi Bank, testified Rudder had assigned certain oil and gas royalty checks to the bank. However, employees under Hickman's supervision had observed Rudder continued to cash these royalty checks at the bank.
Rudder admitted he liquidated between $50,000.00 and $60,000.00 worth of stock after the separation. Additionally, he admitted he spent or gave away $25,000.00 worth of Port Authority Bonds.
Mrs. Rudder testified she worked outside the home from the time of their marriage until her daughter was born, when she ceased working at her husband's insistence. It is undisputed that her income was always used to pay household expenses. Both she and her mother testified the parties used Mrs. Rudder's salary to pay household bills so that Rudder could invest his income.
Mrs. Rudder, who was 47 at time of trial, testified she suffered from a nervous disorder which had caused rashes and weight loss. This problem and the necessity of caring for her child prevented her from working outside the home. Her basic monthly living expenses for herself and the child were approximately $1500.00.
Mrs. Rudder contends her husband engaged in a "deliberate and fraudulent course of conduct" to avoid his obligation to support her and Beverly. Buttressing this contention is evidence that Rudder not only engaged in a systematic disbursement of his assets between the parties' separation and the trial, but that he also attempted to conceal his financial dealings (and other evidence) from her attorney prior to trial.
Instead of responding forthrightly to the questions on cross-examination, Rudder often provided only sarcastic comments, evasive answers and derisive statements in an attempt, in our opinion, to avoid disclosure of the disposition he had made of his assets.[1]
We are of the opinion the facts warrant a new hearing on the issue of Rudder's ability to pay alimony. In Smith v. Smith, 429 So.2d 588 (Miss. 1983), a case with some factual similarities, we remanded for further consideration of the alimony award *678 where the evidence indicated Smith's "purpose to disburse the assets acquired during 34 years of marriage to hinder the trial court in its determination of equitable support for the wife." 429 So.2d at 589. While the facts are not identical to this case, we are of the opinion the Smith rationale applies here.
We have held many times that where the wife has "contributed to the accumulation of property of her husband ..." she is entitled to a reasonable award of alimony, to be paid in lump sum or monthly, or both. Jenkins v. Jenkins, 278 So.2d 446, 449 (Miss. 1973). Accord, Schilling v. Schilling, 452 So.2d 834 (Miss. 1984); McKee v. McKee, 418 So.2d 764 (Miss. 1982).
Under the facts of this case, the $227.00 per month social security payment appears to be grossly inadequate for a wife who for some 13 years contributed to her husband's financial plan. It is noteworthy that during these years Rudder's income and net worth rose steadily. We are of the opinion Rudder should not now be permitted to reap all the benefits of this increase simply by divesting himself of assets to avoid the appearance of income.
We likewise think the court on remand should award a sum or sums for the child's support with some specificity to assure its enforcement. In reaching this conclusion we observe the present award of "any income or divident received from any investments in the name of the child" are indefinite in amount, type, whereabouts, and the name of the holder, though admittedly the investments are within the control of Mr. Rudder. This award is worthless, as a practical matter, to the mother for enforcement. In view of Rudder's attitude toward his wife, as evidenced from the record, there is much doubt that she has or will receive any child support from these investments although she has the responsibility of rearing the child.
While it is true that Mrs. Rudder has some assets or income, we are also unable to determine their value in order to ascertain her needs to maintain the position in life to which she has become accustomed as a wife and mother. This circumstance, in our opinion, should also be considered by the trial court in assessing both alimony and support for the child.
For the above reasons, we affirm the granting of a divorce to Mrs. Rudder and reverse and remand for a proper award of alimony and child support.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Rudder exhibited contempt specifically for his wife and for the legal profession in general. For example, when asked on cross-examination whether he would begrudge Mrs. Rudder a decent standard of living, he replied, "I would begrudge her hay if she was a mule on a concrete pasture." Further, Rudder accused his wife's attorney as follows: "See, you don't have any other cases but this so all you do is churn this one as much as you can and try to bleed this account." At one point Rudder even advised opposing counsel, "Get your bifocals checked again." On several occasions Rudder boasted about having evaded the rules of discovery, e.g., "I told you you were in for some surprises."

The foregoing retorts were made without comment from the trial judge to preserve proper decorum and orderly procedure in the court.