795 So.2d 1054 (2001)
Kenneth M. SCHREIBER, Appellant,
v.
Linda SCHREIBER, Appellee.
No. 4D00-4520.
District Court of Appeal of Florida, Fourth District.
September 19, 2001.
*1055 Robert W. Murphy, Fort Lauderdale, for appellant.
Jonathan S. Root and Joseph Heimovics of Graner Root & Libow, P.A., Boca Raton, for appellee.
OWEN, WILLIAM C., JR., Senior Judge.
The final judgment dissolving the Schreibers' 20 year marriage incorporated the parties' Marital Settlement Agreement (MSA), the provisions of which imposed patently unfair and unreasonable financial obligations on appellant, the former husband. Prior to final hearing, appellant sought unsuccessfully to have the trial court vacate or modify the MSA's periodic alimony provisions.[1] On this appeal from the final judgment, appellant raises several issues, the principal one of which is whether the trial court erred in enforcing the MSA without modification. We affirm, concluding that the trial court, in denying appellant's motion to vacate or modify the periodic alimony provisions of the MSA, properly followed the principles established by Casto v. Casto, 508 So.2d 330 (Fla.1987).
Shortly after the parties separated, Mrs. Schreiber, the former wife, appellee, consulted an attorney. The attorney prepared the MSA and appellee took it to appellant for his signature. She informed *1056 appellant that she had an attorney draft the legal paperwork to end their marriage, and that she needed appellant to look at the proposed agreement and to sign it because "it would be financially more expensive to go through this in the courts, and this is what the law was anyway, so let's just do this and get it over with." Appellant took the MSA home, presumably to have time to review it. A week later, without consulting an attorney, he signed the MSA but only after he had expressed to appellee his concern that he was not going to be able to live with the kind of money she wanted him to pay her, and she, in response, had assured him that she would not hold him to the agreement.
The financial provisions of the MSA can be summarized briefly: Appellee was to receive the following: (1) as lump sum alimony, all of their marital assets which (including the marital home) had a total equity value of $106,000; (2) as permanent periodic alimony, $1,000 per month until the appellant's child support obligation ceased, and thereafter $2,000 per month; (3) as undifferentiated child support for the parties' two minor children, ages 17 and 13, respectively, $1,500 per month, to continue until the younger died, reached age 18 or married, whichever was first to occur; and (4) title to the 1995 Ford Windstar. Appellant was allowed to keep his tools and was to receive title to a 1998 Ford Ranger on which there were payments of $400 a month. In addition to appellant's obligations for periodic alimony and child support payments, he was required to assume $1,900 of the parties' $2,000 in credit card debts, to continue the medical and dental insurance on the children and to pay any of their medical and dental expense not covered by the insurance.
The parties' respective financial affidavits showed appellant's net monthly income to be $3,380, and appellee's to be $1,326. Consequently, if appellant were to meet all of his monthly obligations under the MSA as listed above, he would be left with approximately $105 a month for his living expenses while appellee would have approximately $3,826 for her own and the children's living expenses. To top it off, appellant, stripped of substantially all assets and rendered impecunious by the monthly obligations imposed by the MSA, was also required to pay $2,000 of appellee's attorney's fees.[2]
Casto sets out the two permissible grounds by which a spouse may seek an order vacating or modifying a postnuptial agreement in a dissolution proceeding. The first is by establishing that the agreement was reached by means of fraud, deceit, duress, coercion, misrepresentation, or overreaching. The second contains multiple elements, but the threshold requirement is the necessity of establishing that the agreement makes an unfair or unreasonable provision for the challenging spouse, given the circumstances of the parties. Appellant's motion to vacate or modify the periodic alimony provisions of the MSA was based on both grounds, i.e., that the MSA was the product of appellee's overreaching and that the MSA made unfair or unreasonable financial provisions for him. He argues both grounds here, as well.
As to the first ground, appellant argues that the MSA was the product of appellee's overreaching and that such overreaching rendered the agreement unconscionable and impossible to perform. In support of that argument, he cites to the cases of Tenneboe v. Tenneboe, 558 So.2d 470 (Fla. 4th DCA 1990), Torres v. *1057 Lincheta, 744 So.2d 1193 (Fla. 3d DCA 1999), Moss-Jacober v. Moss, 334 So.2d 89 (Fla. 3d DCA 1976), and McGregor v. McGregor, 447 So.2d 994 (Fla. 4th DCA 1984). The problem we find with that argument is the lack of competent evidence that the MSA was the product of overreaching on appellee's part. It definitely was one-sided and unfair. But, that alone, no matter how egregious, does not translate into overreaching absent a sufficient showing that the MSA resulted from an inequality of bargaining power or other circumstances such that there was no meaningful choice on the part of the disadvantaged party.[3] Basically, overreaching involves the situation where one party, having the ability to force the other into an unfair agreement, does so. The court found that there was no overreaching on the part of appellee and that appellant freely and voluntarily signed the MSA. There is competent substantial evidence in the record to support both findings and we will not disturb those findings.
As to the second ground, appellant correctly argues that the MSA made unfair or unreasonable financial provisions for him. Although the trial court did not make an express finding to that effect, the court repeatedly expressed its concern that the agreement was unfair,[4] leaving no doubt that such was the court's finding. We have no hesitancy in declaring that the MSA was unfair or unreasonable on its face, given the circumstances of the parties, and we venture that no objective view of the financial provisions of the MSA would permit any finding to the contrary.
The unreasonableness of the MSA in this case having been established, a presumption arose of either concealment by the appellee, or a presumed lack of knowledge by the appellant, of appellee's finances at the time the agreement was reached. The burden then shifted to the appellee to rebut these presumptions. See Casto, 508 So.2d at 333. Appellant argues that appellee could not have rebutted these presumptions because she never presented evidence on these issues.[5] That argument is without merit because it ignores the fact that evidence sufficient to rebut these presumptions came in during appellant's own presentation, both on cross-examination of appellant and on direct examination of appellee, whom appellant called as an adverse party.
On cross-examination of appellant, he admitted (a) that appellee did not conceal anything concerning either of their respective financial circumstances, (b) that he knew the value of the marital home and the other marital assets, (c) more importantly, that he did not contest the distribution of the marital assets or the child support provisions, (d) that he knew what he earned and approximately what appellee earned, (e) that he signed their most recent joint income tax return but chose not to look at it, (f) that he reads and *1058 understands the English language and has a high school education, (g) that no one prevented him from computing the amount of his monthly obligations under the MSA nor from having an attorney review it for him, (h) that appellee offered to take the vehicle with the $400 per month payments so that he could have a vehicle with no payments on it, an offer that he refused, and (i) that nobody threatened him to make him sign the MSA. On further questioning of appellant, this by the court, appellant admitted that he knew he would be responsible for the children's orthodontist, the credit card balances, the health insurance premiums, and the truck payment; however, when he stated that he had not realized how little of his net income would remain for his own living expenses, he could not explain why he had not made that determination before he signed. Appellant then called appellee to the stand. She testified that she regularly attempted to discuss with appellant the matter of family finances but he simply failed or refused to take any interest in the family's financial matters.[6] While the burden to rebut the presumptions remained on the appellee, that burden may be met by any evidence before the court. In this instance, appellee's burden to rebut the presumptions was met unequivocally by the evidence recited above, notwithstanding that such evidence came in during appellant's presentation. Simply stated, this case did not involve complex financial circumstances and, within reason, both parties were generally well aware of the family financial matters.
Without question, appellant made a bad fiscal bargain that was unreasonable. However, "[i]f an agreement that is unreasonable is freely entered into, it is enforceable." Casto, 508 So.2d at 334; see also Petracca v. Petracca, 706 So.2d 904, 911 (Fla. 4th DCA 1998)("Bad domestic bargains-meaning unfair or unreasonable property and monetary settlement agreements-are nevertheless enforceable so long as they are knowing, voluntary and not otherwise against public policy"). On this issue the Casto court stated:
A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' fiscal position.
Id. at 334. There is evidence in this record that appellant, unhappy in the marriage, moved in with another woman two weeks after leaving the marital home. Such evidence would support the notion that the husband may well have wanted out of the marriage at any cost. As the trial judge found that the agreement was freely and voluntarily entered into, a finding which we have earlier noted is fully supported by the record, the bad bargain is not enough reason to vitiate the agreement. The Casto court admonished, however:
Courts ... must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of these agreements.
Id. Appellant relies on this language, asserting that the trial court should have more closely scrutinized the MSA because it was a marital agreement. This court, in Petracca, also addressed that premise, stating that Casto makes it clear that "the... fairness of a pre-litigation settlement is open to question by a judge only when there is some reason to suppose from the relationship of mutual trust and confidence that the parties were not dealing at arm's *1059 length and that the agreement resulted from inadequate disclosure of financial resources." Id. at 912-13. Despite the appellant's assertions that he relied on and trusted his wife, he admitted that they were not getting along, that they had been involved in many disagreements, and that he had moved out of the house; furthermore, he admitted that his wife was not a lawyer nor a paralegal. The trial court questioned appellant in detail as to why he would accept her view that the provisions of the MSA were "the law" and clearly concluded that under all of the circumstances appellant's profession of absolute trust in appellee's representations were not reasonable. As there was no reason for the court to suppose that the parties were not dealing at arm's length, there was no reason for the court to further question the fairness of the settlement. See Petracca, 706 So.2d at 911 ("adequacy of knowledge can be plausibly raised only when the agreement was reached by marital parties in conditions of mutual trust"). In sum, the grounds set forth in Casto for vacating a marital settlement agreement have not been established; hence, the trial judge did not err in denying the husband's motion to set it aside.
Finally, appellant argues that the trial court erred in conducting a final hearing in the absence of notice to the parties and without the case being at issue. This point arises from the procedural path the case took. In addition to filing the motion to vacate, appellant also filed a motion for leave to file an amended answer and counter petition for dissolution. Hearing on both motions was scheduled for the same time. The motion for leave to amend was heard first and, appellee voicing no objection, it was granted. The court announced that the proposed amended answer and counter petition attached to the motion would be deemed filed at that time, and appellee would be given 10 days in which to file any response.[7] The motion to vacate was then heard, at the conclusion of which the trial court announced its ruling denying appellant's motion to vacate or modify the MSA.
At that point, by virtue of appellant's filing the amended answer and counter petition, the case was neither at issue nor ready for trial. Furthermore, at that time no order had been entered setting a trial date. Nonetheless, appellee's counsel suggested that the court's announced ruling on the motion to vacate having settled the matter of the validity of the MSA and rendered moot the amended answer, there was no practical reason why the court should not then and there proceed to final hearing. Appellant's counsel assented and participated in the final hearing without objection. A party may stipulate to the setting of a trial without a court order. Parrish v. Dougherty, 505 So.2d 646 (Fla. 1st DCA 1987). Furthermore, if a party appears at the trial and raises no objection to the absence of an order setting the trial, he waives any objection to the lack of a pretrial order. Id.; Coquina, Ltd. v. Nicholson Cabinet Co., 509 So.2d 1344 (Fla. 1st DCA 1987). Appellant has waived this issue.
AFFIRMED.
DELL and TAYLOR, JJ., concur.
NOTES
[1] As initially filed, the motion requested the court to vacate the financial provisions of the MSA. At the evidentiary hearing, appellant orally amended the motion to request an order vacating or modifying only the periodic alimony provisions, stating he had no objections to the other provisions.
[2] Even that did not complete appellant's financial flogging. The MSA also provided that the periodic alimony payments were to be non-taxable to appellee and non-deductible by appellant.
[3] Overreaching has been defined as that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties. Black's Law Dictionary p. 1104 (6th Ed.1990).
[4] At one point during the evidentiary hearing on the motion to vacate, after the court had expressed its concerns as to the unfairness of the MSA, and particularly with appellant's ability to meet his financial obligations, appellee's counsel responded, "We're going to work that out." Whether that remark by counsel falls into the same genre of compassion as appellee's assurances to appellant that she would not hold him to the agreement should he be unable to meet his obligations remains to be seen.
[5] At the evidentiary hearing on appellant's motion to vacate or modify the periodic alimony provisions, after appellant had presented his evidence, the court "directed a verdict" for appellee, thereby precluding the necessity of appellee presenting evidence.
[6] At the hearing, appellant's counsel informed the court that appellant was not alleging that there had been any sort of distortion of the marital finances.
[7] The amended answer, instead of admitting the validity of the MSA as the original answer had done, now denied that the MSA was a valid agreement of the parties. The appellant's counter petition sought dissolution and judicial determination of most of the financial obligations of the parties. The amended answer and counter petition thus put into issue the validity of the MSA.