919 So.2d 1112 (2005)
Cynthia Nelson LOWREY, Appellant
v.
Perrin H. LOWREY, Appellee.
No. 2004-CA-00532-COA.
Court of Appeals of Mississippi.
August 2, 2005.
Rehearing Denied November 8, 2005.
*1114 Mark A. Chinn, Jackson, attorney for appellant.
Erik M. Lowrey, Robert R. Marshall, David Alan Pumford, Hattiesburg, attorneys for appellee.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Citing irreconcilable differences, Cynthia and Perrin Lowery severed their marriage pursuant to a final judgment of divorce entered by the Lamar County Chancery Court. Since Cynthia and Perrin submitted a settlement agreement that the chancellor found "adequate and sufficient," the final judgment did not address property division, child custody, child support, or alimony. That is, the final judgment of divorce did not address those issues other than by reference to the settlement agreement. However, Cynthia eventually filed a motion for relief from the chancery court's final judgment of divorce. Following a volley of response motions, the chancellor overruled Cynthia's motion for relief. Aggrieved, Cynthia appeals. Finding error, we reverse the chancellor's decision.

FACTS AND PROCEDURAL HISTORY
¶ 2. Cynthia and Perrin maintained their marriage for nineteen years. During that time, they had three daughters. Cynthia worked as a "stay at home mom" until the girls were old enough to go to school.[1] At that point, Cynthia began putting in part-time hours in a flower shop. Beginning innocently enough, Cynthia developed a gambling hobby that evolved into a gambling addiction. Eventually, Cynthia lost her job at the flower shop.
¶ 3. When Cynthia confessed her gambling addiction, the couple experienced difficulty that led them to family counseling, conducted by their church. Although the couple made efforts to reconcile, Perrin gave Cynthia divorce papers while their *1115 counselor was out of town. Perrin and Cynthia each signed a joint complaint for divorce, drafted by Perrin's brother, Erik Lowrey. They filed the petition on July 1, 2002.

I. The Joint Complaint for Divorce
¶ 4. According to the couple's joint complaint for divorce, Perrin was a fit and proper person to retain custody of the couple's three daughters. The joint complaint also stated that Cynthia understood that Erik Lowrey acted solely as Perrin's attorney. Additionally, by signing the joint complaint, Cynthia acknowledged that Erik had not represented her in any manner and that Erik did not render her any legal assistance.

II. The Settlement Agreement
¶ 5. Erik, on Perrin's behalf, drafted a settlement agreement. On July 3, 2002, Cynthia went to Erik's law office. Since Erik was not in the office, one of Erik's staff informed Cynthia where she was to sign the settlement agreement. According to Cynthia, she signed the settlement agreement without reading it. Perrin signed the agreement on July 10, 2002. The settlement agreement covered child custody, child support, property division, and alimony.
¶ 6. Regarding child custody, the settlement agreement set forth that Perrin received permanent legal and physical custody of the girls. Cynthia received "reasonable visitation rights with the minor children" conditioned on "reasonable time line notice of 48 hours" to Perrin. In addition to the unstated "reasonable visitation rights," Cynthia received "such other and further visitation rights with the minor children as may be reasonable under all relevant circumstances, and which may be agreed upon" by Cynthia and Perrin.
¶ 7. As for child support, the agreement set forth that Cynthia was to pay Perrin child support "by purchasing clothing for the minor children, in the amount to which she can afford." Also, when Cynthia "obtained full time employment, she would put 10% of her gross salary in a college fund in the name of [Perrin], Erin, and Emilie." Perrin agreed to provide insurance on the children, but Cynthia was required to pay one-half of medical expenses not covered by insurance.
¶ 8. Regarding division of property, the agreement stated that Perrin would get the marital home, while assuming all debts regarding the marital home. Perrin kept his 1997 Ford Windstar and Cynthia kept her 1991 Nissan Altima. Perrin retained possession of all "items of household furniture and appliances" located in the marital home. Each party got to keep "their respective personal effects such as jewelry, clothing, sports equipment and other items of a personal nature." As for debts, the parties became jointly responsible for the AT & T debt, otherwise Cynthia became "solely responsible for the payment of all credit card payments from the marriage including but not limited to Capital One, Universal City Bank, National City Bank, McRaes, Sears, and Venture." As mentioned, Perrin became solely responsible for the mortgage debt on the marital home he retained.
¶ 9. As for retirement accounts, the agreement set forth that Perrin and Cynthia "hereby agree and acknowledge that they waive any and all rights that they may have to any and all retirement accounts of the other, including, but not limited to, 401(k) plans, IRA accounts, state retirement accounts and deferred compensation." An additional provision, the agreement stated that Perrin and Cynthia "release and relinquish any and all claims, demands and rights of action of every kind *1116 and nature other than those created by this agreement and by said contemplated decree which each might have or hereafter acquire against the other's assets which grow out of or in any way arise from the marital relationship."
¶ 10. On the subject of alimony, the agreement dictated that "[t]he parties hereby both agree and acknowledge that any and all claims which either of them might have to alimony, permanent or temporary, past, present, or future, against the other party are hereby satisfied and extinguished; and they both agree and covenant that they will not sue for any alimony, temporary or permanent, or make any claim of any kind or character upon the other party for alimony or make any claim against any of this property."

III. The Final Judgment of Divorce
¶ 11. On September 3, 2002, the chancellor entered his final judgment of divorce. While there is no indication in the record that Cynthia attended the hearing, or even had notice of the hearing, there is no doubt that neither Cynthia nor her attorney reviewed or signed the final judgment of divorce. The final judgment, drafted by Erik, set forth that the children would remain with Perrin, a "fit and proper person to retain legal custody of said children." Additionally, the final judgment stated that Cynthia and Perrin were entitled to a divorce on the grounds of irreconcilable differences. A further provision in the final judgment stated, "[t]he parties have made adequate and sufficient provisions by written agreement of the settlement of any and all property rights between the parties as well as adequate and sufficient provisions by written agreement for the custody and maintenance of the minor children of the marriage." The chancery court offered no further elaboration on the adequacy or sufficiency of the terms of the settlement agreement.

IV. Cynthia's Motion for Relief from the Final Judgment
¶ 12. On March 3, 2003, Cynthia filed a motion for relief from the final judgment of divorce. Cynthia sought relief based on the inequity in the settlement agreement and her claim that she was overreached. On February 27, 2004, the chancellor entered an order and overruled Cynthia's motion for relief from the final judgment of divorce. The chancellor determined that Cynthia was not entitled to relief under Rule 60(b). The chancellor based his decision on his conclusion that overreaching, unlike fraud or misconduct is not mentioned in Rule 60(b). The chancellor could not find a case that defined overreaching or set forth the necessary elements or the burden of proof under the circumstances. The chancellor determined that overreaching is almost always plead alongside an allegation of fraud.
¶ 13. The chancellor set forth the requirements of a demonstration of fraud and found that Cynthia did not argue any of the elements of fraud. The chancellor then concluded that overreaching is somewhat synonymous with fraud and that to succeed on an allegation of overreaching a movant must be prepared to show elements of fraud. Finding that Cynthia did not allege any type of fraud, the chancellor overruled Cynthia's motion for relief. Simultaneously, the chancellor overruled all other requests for relief.

ANALYSIS

I. Did the chancellor err when he denied Cynthia's motion for relief from the final judgment pursuant to Mississippi Rules of Civil Procedure 60(b), which allows relief from a judgment upon a demonstration of misconduct in the form of overreaching by the adverse party?
¶ 14. As mentioned above, the chancellor overruled Cynthia's motion for relief *1117 from the judgment of divorce. Cynthia claims that the chancellor's decision amounts to reversible error. According to Cynthia, the chancellor should have granted relief from the final judgment of divorce because M.R.C.P. 60(b) grants relief from a final judgment of divorce when the adverse party engages in misconduct in the form of overreaching.
¶ 15. The chancellor determined that Cynthia was not entitled to relief under M.R.C.P. 60(b) in the form of overreaching. In his order denying Cynthia's motion for relief, the chancellor noted that no Mississippi authority defines "overreaching" within the current context. The chancellor relied on Black's Law Dictionary for his definition of overreaching. The order on Cynthia's motion for relief states that "overreaching is defined as [t]he act or an instance of taking unfair advantage of another, especially by fraudulent means." The chancellor also cited a definition from Barron's Law Dictionary, which defined overreaching as the act of "taking unfair advantage of another through fraudulent practices or abuse of superior bargaining power." Accordingly, the chancellor concluded that overreaching is almost always pled alongside fraud and overreaching is also somewhat synonymous with fraud. Finding such, the chancellor found that a movant must be prepared to demonstrate elements of fraud to successfully demonstrate overreaching. According to the chancellor, since Cynthia did not allege fraud, Cynthia was not entitled to relief due to overreaching.
¶ 16. On appeal, Cynthia claims error in the chancellor's decision. This Court evaluates the denial of a motion under M.R.C.P. 60(b) according to the abuse of discretion standard. Montgomery v. Montgomery, 759 So.2d 1238 (¶ 5) (Miss.2000) (citing Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984)). The findings of a chancellor will not be disturbed unless the chancellor was either manifestly wrong or clearly erroneous or the chancellor arrived at those findings after an application of an erroneous legal standard. Perkins v. Perkins, 787 So.2d 1256 (¶ 9) (Miss.2001). Our resolution of this issue depends on whether the chancellor's decision that a demonstration of overreaching depends upon a demonstration of fraud. Was the chancellor's decision manifestly wrong, clearly erroneous, or arrived at after an application of an erroneous legal standard?
¶ 17. In essence, the chancellor stated that a successful claim of overreaching depends on a demonstration of fraud and overreaching. However, the authority the chancellor relied on contradicts that finding. Because no Mississippi authority defines "overreaching," the chancellor relied on two law dictionaries for his analysis.
¶ 18. One such definition came from Black's Law Dictionary. According to the chancellor's definition from Black's Law Dictionary, "overreaching is defined as [t]he act or an instance of taking unfair advantage of another, especially by fraudulent means." That definition suggests that overreaching is "the act or an instance of taking unfair advantage of another." While that definition suggests that fraudulent means is a method by which one may take unfair advantage of another, that definition clearly does not suggest that one must demonstrate fraud to prove overreaching.
¶ 19. The chancellor also cited a definition of overreaching from Barron's Law Dictionary. That source defined overreaching, in the context of commercial law, as the act of "taking unfair advantage of another through fraudulent practices or abuse of superior bargaining power." Again, that definition suggests that overreaching is the act of "taking unfair advantage *1118 of another." Unlike the first definition, this definition suggests that one may take advantage of another by two methods: fraudulent practices or abuse of superior bargaining power. While this definition suggests that one may take advantage of another by fraud, because the definition also suggests that one may take advantage of another by abuse of superior bargaining power, it is clear that this definition, like the previous one, does not suggest that a demonstration of overreaching depends on a demonstration of fraud.
¶ 20. Further, the chancellor's foundation of Cynthia's overreaching argument does not comply with our standard of review mandating enforcement of a property settlement agreement "absent fraud or overreaching." Palmere v. Curtis, 789 So.2d 126 (¶ 10) (Miss.2001) (emphasis added). The disjunctive "or" suggests that overreaching does not depend on a demonstration of fraud. This also contradicts the chancellor's determination that one demonstrating overreaching must be prepared to demonstrate fraud.
¶ 21. Our review of this issue mandates that we affirm the chancellor's decision unless the chancellor's decision was manifestly wrong, clearly erroneous, or determined after an application of an erroneous legal standard. Perkins, 787 So.2d at (¶ 9). "The word `manifest', as defined in this context, means `unmistakable, clear, plain, or indisputable.'" Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995). It is unmistakably clear that when the chancellor denied Cynthia's motion for relief from judgment because a demonstration of overreaching depends on a demonstration of fraud, the chancellor was manifestly wrong. Further, when the chancellor applied Cynthia's allegation of overreaching to the elements necessary to establish fraud, the chancellor evaluated Cynthia's allegation according to an erroneous legal standard. Having found such, we reverse the chancellor's decision to deny Cynthia's motion for relief from the judgment of divorce.
¶ 22. Thus, we consider the allegations detailed within Cynthia's motion for relief. That is, is Cynthia entitled to relief from the judgment of divorce due to misconduct in the form of overreaching? According to Rule 60(b) "[o]n motion and upon such terms that are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) fraud, misrepresentation, or other misconduct of an adverse party; (2) accident or mistake." M.R.C.P. 60(b). "In those circumstances, the burden is upon the movant to prove fraud, misrepresentation or other misconduct, and to do so by clear and convincing evidence." Stringfellow, 451 So.2d at 221. Suffice to say, a chancery court can use Rule 60(b) to set aside a divorce judgment when an adverse party engages in "misconduct." Still, what falls under "misconduct?" Can "overreaching" equate to "misconduct" for the purposes of setting aside a judgment pursuant to Rule 60(b)?
¶ 23. Our standard of review dictates that this Court must enforce a settlement agreement connected to a divorce action as long as that agreement received approval by the chancery court. Palmere, 789 So.2d at (¶ 10) (citing Bell v. Bell, 572 So.2d 841, 844 (Miss.1990)). There are two exceptions to our mandate to enforce an approved settlement agreement: this Court may not enforce such an agreement if the moving party demonstrates either fraud or overreaching. Id.
¶ 24. Viewed alongside the previously mentioned provisions in Rule 60(b) it becomes clear that "overreaching" would amount to "misconduct" under the circumstances. *1119 That is, we must enforce a settlement agreement absent fraud or overreaching, and we must grant relief from a judgment upon a demonstration of fraud, misrepresentation, or other misconduct. If we find overreaching, the agreement is unenforceable. If the agreement is unenforceable, then Cynthia and Perrin would have a divorce, but the issues of child custody, child support, property division, and alimony would remain unresolved. Consequently, a finding of overreaching would leave this Court with no choice but to grant Cynthia's request for relief from the final judgment based on those unresolved issues, which became unresolved because the agreement that resolved those issues became unenforceable due to overreaching.
¶ 25. If the agreement is unenforceable because of overreaching, then the only category under Rule 60(b) that would apply would be the "other misconduct" provision. That is, Rule 60(b) specifically addresses fraud and misrepresentation, with "other misconduct" as the catch-all provision. Since overreaching is neither fraud nor misrepresentation, it must fall under "other misconduct." Having resolved whether overreaching falls under "other misconduct," we must still determine what exactly overreaching means.
¶ 26. As mentioned above, the chancellor cited two definitions of overreaching from law dictionaries. The chancellor relied on Black's Law Dictionary for his definition of overreaching. The order on Cynthia's motion for relief states: "overreaching is defined as [t]he act or an instance of taking unfair advantage of another, especially by fraudulent means." The chancellor also cited a definition from Barron's Law Dictionary, which defined overreaching as the act of "taking unfair advantage of another through fraudulent practices or abuse of superior bargaining power." Both of those definitions suggested that overreaching involves taking unfair advantage of another.
¶ 27. In Schreiber v. Schreiber, 795 So.2d 1054 (Fla.Ct.App.2001) the Florida District Court of Appeals enforced a marital settlement agreement and did not find overreaching. However, Schreiber defines overreaching as "that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." Id., at 1057. Schreiber also stated that "overreaching involves the situation where one party, having the ability to force the other into an unfair agreement, does so." Id.
¶ 28. In Derby v. Derby, 8 Va.App. 19, 378 S.E.2d 74 (1989) the Virginia Court of Appeals affirmed the setting aside of a marital settlement agreement based on the disparity in the agreement. Derby states that "[a] party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce it." Id. at 79. The concept that courts of equity may refuse to enforce an agreement that is patently unfair also appears in our Mississippi jurisprudence.
¶ 29. Before approving an agreement regarding child custody or support, a chancery court should satisfy itself that the provisions for the care and maintenance of the children are "adequate and sufficient." Miss.Code Ann. § 93-5-2(2) (Rev.2004); see also Bell, 572 So.2d at 845. "The statutory requirement of Section 93-5-2(2) that the `court finds such provisions adequate and sufficient' clearly anticipates more than just a mere recitation of the obligatory words of the statute." Perkins, 787 So.2d at 1265 n. Perkins went on to add "[t]he record before us presents a very one-sided agreement, which on its face appears *1120 inequitable." Id. Indeed, "[t]he principles of equitable distribution apply in all divorce cases, whether based on fault grounds or irreconcilable differences." Id.
¶ 30. However, we must balance this against the concept that "[t]he law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the Agreement which the parties have made, absent any fraud, mistake, or overreaching." McManus v. Howard, 569 So.2d 1213, 1215 (Miss.1990) (citations omitted). "This is as true of agreements made in the process of the termination of the marriage by divorce as of any other kind of negotiated settlement." Id. "With regard to the property of the parties, this is a strong and enforceable rule with few, if any, exceptions." Id. Still, the Mississippi Supreme Court has avoided limiting parties' rights to contract. See Grier v. Grier, 616 So.2d 337, 341 (Miss.1993).
¶ 31. Nonetheless, Cynthia is not entitled to special privilege simply because she asks this Court to interpret a property settlement agreement, entered incident to a divorce on irreconcilable differences. Quite the contrary, as "[a] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated into a divorce decree, does not change its character." West v. West, 891 So.2d 203 (¶ 13) (Miss.2004).
¶ 32. Mississippi Law also distinguishes between provisions regarding property and financial matters and custody of minor children. "In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude." Bell, 572 So.2d at 844. However, "[w]hen the subject of the Agreement is the custody of minor children . . ., other considerations override the basic rule." McManus, 569 So.2d at 1215 (citations omitted). "The welfare of the children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal." Id. at 1215-16. "Since the organization of our state government it has been the established policy of the law to regard the minor children of divorced parents as wards of the courts in the same general way that minor children of deceased parents are regarded." Owens, By and Through, Mosley v. Huffman, 481 So.2d 231, 244 (Miss.1985) (citations omitted). This Court cannot say that the settlement agreement at issue is in the best interests of the children. The agreement gives the children no specific visitation period with their mother, formerly the primary caregiver of the children. Because the settlement agreement is not in the best interests of the children, it is not adequate or sufficient to meet the statutory standards of Mississippi Code Annoted § 93-5-2.
¶ 33. Still, the agreement lacks adequacy and sufficiency for yet another reason. In Rudder v. Rudder, 467 So.2d 675, 678 (Miss.1985), the Mississippi Supreme Court held that a child support award of "any income or divident received from any investments in the name of the child" was too "indefinite in amount, type, whereabouts, and the name of the holder." Further, Rudder held that the award was worthless, as a practical matter, to the custodial parent for enforcement. Id. As it stands, a finding of adequacy and sufficiency depends upon enforceability of the child support provisions contained in a property settlement agreement.
¶ 34. Here, the child support provision of the settlement agreement lack sufficient specificity to assure its enforcement. As *1121 for child support, the agreement set forth that Cynthia was to pay Perrin child support "by purchasing clothing for the minor children, in the amount to which she can afford." While it may or may not enure to Cynthia's benefit to be held to this support amount, that award is too indefinite in amount. That is, an amount that Cynthia can afford gives a court considering enforcement of that provision no guideline as to what Cynthia can actually afford. Thus, there is no way to determine whether Cynthia is fulfilling or breaching her obligation to purchase clothing in the amount she can afford.
¶ 35. Despite our finding that the property settlement agreement is not sufficient, that is just one consideration in our analysis. The remainder of our analysis of whether Cynthia is entitled to relief depends upon whether Cynthia was overreached because the settlement agreement was so one-sided that it could never be considered "adequate and sufficient." In Schreiber, the Florida District Court of Appeal held that an agreement was not the product of overreaching where it was definitely one-sided and unfair, but that alone did not equate to overreaching absent a sufficient showing that the settlement agreement resulted from an inequality of bargaining power or other circumstances such that there was no meaningful choice on the part of the disadvantaged party. Schreiber 795 So.2d at 1057. We find this to be compelling reasoning.
¶ 36. There is no doubt that the agreement is one-sided and unfair. Pursuant to the settlement agreement, Cynthia surrendered legal and physical custody of her children though she had been the children's primary caregiver up to that point. Additionally, Cynthia received little to no specified visitation rights with her children. Moreover, though she had no means of income, she agreed to purchase clothing for the girls, pay half the AT & T debt, all the credit card debt, and pay ten percent of her gross income as child support. Regarding marital property, Cynthia gave up all her marital property except personal items, while Perrin receives the marital home, the equity in the marital home, full legal and physical custody of the children, his retirement funds, and nearly all of the marital property. The gross disparity in the settlement agreement indicates that the agreement is one-sided and unfair.
¶ 37. Still, did Cynthia demonstrate that the settlement agreement resulted from an inequality of bargaining power or other circumstances such that Cynthia had no meaningful choice whether to enter the settlement agreement? Cynthia claims that she was in a vulnerable position when she signed the agreement, so that she lacked bargaining power. Cynthia points to a lack of bargaining power because she had no attorney and no money to hire an attorney, while Perrin had an attorney. Cynthia also points out that Perrin once told her "you get you an attorney and we will see you in court. We will destroy you. You will never live in this town again and you will never ever see your children again." Cynthia claims that she signed such an inequitable agreement because of the persuasive effect of Perrin's threats to run her out of town and prohibit her from seeing her daughters. Also, when Cynthia signed the settlement agreement, she was at Erik's law office, though Erik was not present when Cynthia signed the agreement. According to Cynthia, a "lady told her where to sign" but neither Erik nor anyone in his office advised her to get a lawyer or asked her if she had seen a lawyer. Cynthia was humiliated and subjected to public shame for her gambling addiction. Cynthia claims that, without counsel, she was completely vulnerable and in a state of duress.
*1122 ¶ 38. Based on the foregoing, Cynthia was entitled to relief for overreaching. While this is a case of first impression, it is not our intent to overrule any precedent in so holding. Nor do we intent to "open the floodgates" to parties dissatisfied with the provisions of their property settlement agreement entered incident to their irreconcilable differences divorce.
¶ 39. Because the chancery court denied Cynthia's motion for relief based on a misapplication of law, we reverse the chancellor's decision and render judgment by granting Cynthia's motion for relief from the judgment of divorce. We find that provisions in the agreement are not "adequate and sufficient" as those terms apply to the property settlement agreement. Additionally, because of the presence of overreaching in the agreement, we find that the settlement agreement is, likewise, insufficient to meet the standards of adequacy and sufficiency and is unenforceable as a result. We remand this matter to the chancery court for a hearing on the parties' joint bill of complaint with instructions to resolve the unresolved matters of child custody, child visitation, child support, property division, and alimony and any other necessary matters not inconsistent with this opinion.
¶ 40. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT DENYING THE APPELLANT'S MOTION FOR RELIEF FROM THE JUDGMENT OF DIVORCE IS REVERSED AND REMANDED FOR RESOLUTION CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. MYERS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., NOT PARTICIPATING.
NOTES
[1] Cynthia included a proffer in her brief in support of her motion for relief. Though Perrin objected to the proffer, the chancery court apparently overruled Perrin's objection when the chancellor held "all other requests for relief are overruled" in the order on Cynthia's motion for relief. Perrin has not appealed the chancellor's decision on Cynthia's proffer. Accordingly, Cynthia's proffer is in the record and sufficiently before this Court.