972 So.2d 1 (2007)
Vincent F. SALEMI, Jr., Appellant
v.
Sheila Hill SALEMI, Appellee.
No. 2006-CA-01312-COA.
Court of Appeals of Mississippi.
September 25, 2007.
Rehearing Denied January 8, 2008.
Luther Putnam Crull, attorney for appellant.
Rebecca Ryan Shappley Moutoux, attorney for appellee.
*2 Before MYERS, P.J., BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. Vincent and Sheila Salemi divorced and executed a property settlement agreement. Nine years after the divorce, Vincent filed a M.R.C.P. 60(b)(6) motion for relief. Vincent specifically sought relief from the provisions of the property settlement agreement that addressed division of Vincent's retirement benefits. In response, Sheila filed a motion to dismiss and claimed that Vincent's motion for relief was untimely. The chancellor agreed with Sheila and dismissed Vincent's motion. Vincent appeals and submits that the chancellor committed reversible error when he dismissed Vincent's motion for relief. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On September 3, 1996, Vincent and Sheila Salemi received a divorce based on irreconcilable differences after approximately nineteen years of marriage. Vincent and Sheila executed a property settlement agreement, and the Desoto County Chancery Court incorporated that agreement into the divorce decree. This dispute focuses on the provisions of that property settlement agreement; particularly the portion of that agreement that addressed division of retirement benefits.
¶ 3. According to paragraph 7 of the settlement agreement Vincent and Sheila were to equally divide their retirement benefits as of the time of their divorce. The agreement specifically set forth:
Wife shall receive one-half (1/2) of the value of Husband's pension through his employment with the United States Postal Service as of the date of the entry of the Final Decree of Divorce. Distribution of said pension shall be made according to the rules governing such pension plan as provided by the U.S. Postal Service. Further, Husband shall receive one-half (1/2) of the value of Wife's Pension and Retirement plan, including her 401(k), through her employment with Allen & O'Hara as of the date of the entry of the Final Decree of Divorce. Distribution of said retirement shall be made according to the rule governing such retirement plan as provided by Allen & O'Hara.
On October 31, 1996, the chancellor entered a Qualified Domestic Relations Order (QDRO) regarding Vincent's pension. On November 7, 1996, the chancellor entered a QDRO in reference to Sheila's 401(k) plan. Paragraph 7 of Sheila's QDRO states:

Amount of alternate Payee's Benefit: This Order assigns to alternate Payee an amount equal to fifty percent (50%) of the total value of the Participant's 401(k) Plan as of the date of the entry of the Final Judgment of Divorce, which is September 3, 1996.
On April 29, 1997, the chancellor entered an Amended QDRO in reference to Vincent's retirement pension with the U.S. Postal Service. Paragraph 7 of the Amended QDRO stated:

Amount of Alternate Payee's Benefit: This Order assigns to Alternate Payee an amount equal to fifty percent (50%) of the Marital Portion of the Participant's Accrued Benefit under the Plan as the Participant's Accrued Benefit under the Plan as the Participant's benefit commencement date, or the Alternate Payee's benefit commencement date, if earlier. The Marital Portion shall be determined by multiplying the Participant's Accrued Benefit by a fraction (less than or equal to 1.0), the numerator *3 of which is the number of months the parties were married while Participant was an employee of the United States Postal Service, (the parties were married from March 27, 1977 to September 3, 1996), and the denominator which is the total number of months the Participant is an employee of the United States Postal Service.
¶ 4. Vincent continued to work with the postal service for the next six and one-half years. He retired in October of 2003. Pursuant to the amended QDRO, Sheila began receiving over $600 per month from Vincent's monthly retirement benefits.
¶ 5. In early May of 2005, Vincent sent the following letter to the U.S. Postal Service Office of Personnel Management:
I am responding pertaining to your letter dated June 2, 1997 regarding payment of my civil service benefits to my former spouse. According to the official court decree, I was obligated to pay the 1/2 of the balance (at date of record) as settlement. My records indicate that amount to be approximately $14,000.00 (Benefit balance at date of decree was $28,000.00)[.]
Since my retirement in October 2003, I have been paying her $600.00 per month toward that obligation. At this rate I will have met my obligation to her in October 2005 ($600 x 24 = $14,400.00).
It is my request to validate my full obligation will be met this October. I would also like to request the payment amount that I will receive beginning November 2005. Four [sic] your benefit I am providing page 4 of the divorce decree and a[sic] page 1 of your letter dated June 2, 1997.
However, Sheila continued to receive over $600 per month of Vincent's pension retirement after October of 2005.
¶ 6. In January of 2006, Vincent filed a Rule 60(b)(6) motion for relief. According to Vincent, he was entitled to relief because the property settlement agreement was ambiguous because he thought Sheila was only entitled to a total of $14,000 of his retirement benefits. To support his contention, Vincent submitted that, "[t]his understanding of said provision by Husband is further supported by the fact that Wife paid him one lump-sum payment of one-half (1/2) of the value of her 401(k) with Allen and O'Hara at the time of the divorce decree, which was less than $1,000.00." Vincent noted that the Amended QDRO granted Sheila the right to receive a portion of his retirement annuity until his death. Vincent further noted that he did not sign the amended QDRO. Vincent claimed that the amended QDRO "was either never fully explained to him or because of his disability he did not understand the terms" of the amended QDRO. Finally, Vincent claimed that "[i]f he had known that by signing the Settlement Agreement he would have obligated himself to pay [Sheila] from his retirement annuity until his death, he would not have entered into the Settlement Agreement."
¶ 7. Sheila responded and filed a motion to dismiss Vincent's motion for relief. According to Sheila, the settlement agreement language was clear and unambiguous. Further, Sheila claimed that Vincent's motion for relief was untimely as it was filed nine years after they received their divorce.
¶ 8. In June of 2006, the chancery court convened for a hearing. However, the chancellor did not require arguments from the parties. Instead, the chancellor announced that he had reached a decision based on the written submissions. According to the chancellor:
once I went completely through the agreement of divorce, and I think you *4 got to do that, looked at who got what and what was done and what was not done. And it kind of gave this Court a little better idea of the situation between the parties at the time of the divorce, and in looking at that, and also looking at the amount of time that took place between when these parties were divorced, and when the money started coming out of the retirement, I cannot help but think that the  that this amount was coming out of the retirement on a monthly basis like it was suppose[d] to be done.
Other wise [sic], one-half of the value of the retirement would have been done immediately after divorce was done, just like the thousand dollars. I can't help, but believe that. And for that reason, and seeing the length of time between the divorce and when the retirement started coming out, and that was the only time this matter was  Rule 60(B)(6) motion was filed. I don't think that time  that time period of waiting there is reasonable. For that reason, I'm going to grant the motion to dismiss.
Like I say, this case, frankly, is one that's real hard for me to digest, but after looking at the entire divorce decree and seeing  and I understand, from your brief that he's having health problems and those things, and, frankly, that probably is more of a reason that I believe that was agreed to at that time, and it was coming out like it's suppose[d] to because you didn't for see [sic] those problems at that time. And now you do, and it maybe [sic] a way that you want to get out of that. Certainly, I can understand that.
No alimony was given in the decree of divorce, and I think I have to look at the background, and the contents of the property settlement to determine in this Court's own mind whether the length of time that you waited between the divorce and when you filed [your] 60(B) motion is reasonable because without that, I can only guess as to whether it's reasonable.
That's why I think you have to go through the entire property settlement, and look at the entire settlement and digest that, then determine whether the time limit of waiting between the date of the entry  entry of the divorce decree, and the time to file the Rule 60(B) motion is reasonable. And that is the reason I'm finding that I don't think that time limit  that wait is reasonable, and I find it's not timely filed and for that reason, I grant the motion to dismiss.
¶ 9. To paraphrase, the chancellor considered the provisions of the entire agreement and found that Vincent's M.R.C.P. 60(b)(6) motion was not filed in a reasonably timely manner. As such, the chancellor dismissed Vincent's motion. Following Vincent's unsuccessful motion for reconsideration, Vincent appeals.

STANDARD OF REVIEW
¶ 10. This Court evaluates the denial of a motion under Rule 60(b) according to the abuse of discretion standard. Lowrey v. Lowrey, 919 So.2d 1112, (¶ 16) (Miss.Ct.App.2005). We will reverse the chancellor's findings if the chancellor applied an erroneous legal standard. West v. West, 891 So.2d 203, (¶ 8) (Miss.2004). Additionally, we will reverse the chancellor's findings if the chancellor was manifestly wrong or clearly erroneous. Id.

ANALYSIS
I. WHETHER THE CHANCELLOR ERRED WHEN HE FOUND THAT VINCENT'S RULE 60(B)(6) MOTION WAS UNTIMELY.
¶ 11. Vincent claims the chancellor's decision to dismiss his Rule 60(b)(6) *5 motion was reversible error. Predictably, Sheila claims the chancellor did not apply an erroneous legal standard and that the chancellor was not manifestly wrong or clearly erroneous. We agree.
¶ 12. Pursuant to Rule 60(b):
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
A party requesting relief pursuant to Rule 60(b)(1)(2) or (3) must file his motion within six months "after the judgment, order, or proceeding" was entered or taken. Id. As for Rule 60(b)(6), a party proceeding under that portion of Rule 60 must make his motion "within a reasonable time."
¶ 13. A portion of Vincent's motion for relief may be interpreted as an assertions of accident, mistake or newly discovered evidence. Within his motion for relief, Vincent alleged that he would not have entered into the settlement agreement "[i]f he had known that . . . he . . . obligated himself to pay [Sheila] from his retirement annuity until his death." To the extent that this particular claim is a claims of accident, mistake or newly discovered evidence, that claim became untimely six months after the chancellor granted the divorce and incorporated the settlement agreement.
¶ 14. Vincent also claimed that the amended QDRO "was . . . never fully explained" to him and that he did not understand the terms of the amended QDRO "because of his disability." Those allegations may also be reasonably construed as claims of accident, mistake, or newly discovered evidence. Similarly, those claims expired six months after the entry of the amended QDRO. However, Vincent also alleged that the property settlement agreement was ambiguous. The chancellor construed Vincent's claim as "any other reason justifying relief from the judgment" under Rule 60(b)(6). A party proceeding under Rule 60(b)(6) must make his motion "within a reasonable time." M.R.C.P. 60(b).
¶ 15. Vincent and Sheila were divorced on September 3, 1996. The chancellor incorporated the settlement agreement at the time of the divorce decree. Vincent's initial QDRO and his amended QDRO were entered in October of 1996 and April of 1997, respectively. Vincent filed his Rule 60(b)(6) motion on January 13, 2006. Vincent filed his motion after he discovered that Sheila's portion of his retirement would not be capped at $14,000. Vincent based his interpretation of the language from the property settlement agreement that, "Wife shall receive one-half (1/2) of the value of Husband's pension through his employment with the United States Postal Service as of the date of the entry of the Final Decree of Divorce."
¶ 16. True enough, the property settlement agreement indicates that Sheila was entitled to one-half of Vincent's retirement as of the time of the divorce. The record does not indicate whether Vincent worked *6 for the postal service during the entire time he was married to Sheila. At any rate, it is undisputed that Vincent's retirement, earned during the marriage, was marital property. Likewise, it is undisputed that Sheila was entitled to an equitable distribution of Vincent's retirement. However, Sheila was not able to receive a lump sum payment from Vincent's retirement at the time of the divorce. That made the amended QDRO necessary. The amended QDRO set forth a calculation intended to address the fact that Sheila was forced to defer receipt of any of Vincent's retirement.
¶ 17. Pursuant to the amended QDRO, Sheila was entitled to monthly payments calculated "by multiplying [Vincent's] Accrued Benefit by a fraction (less than or equal to 1.0)." The numerator of that fraction was "the number of months the parties were married while [Vincent] was an employee of the United States Postal Service." Vincent and Sheila were married from March 27, 1977 to September 3, 1996  approximately 233 months. As mentioned, it is unclear whether Vincent worked for the postal service for the entire 233 months he was married to Sheila.
¶ 18. The denominator of that fraction was "the total number of months [Vincent] is an employee of the United States Postal Service." Vincent retired sometime during October of 2003. Assuming Vincent worked for the postal service for 233 months during the marriage, and he worked an additional 85 months after the marriage, Vincent worked for the postal service a total of 318 months. Vincent was married to Sheila for approximately seventy-three percent of his total employment with the U.S. postal service. According to Vincent's motion for relief, he is entitled to approximately $1,728 per month in retirement benefits. Of that $1,728, Sheila receives approximately $623 per month, leaving Vincent approximately $1,105. Sheila's $623 is approximately thirty-six percent of $1,728. This illustrates the fact that, as time passed and Vincent continued to work with the U.S. Postal Service, Sheila's percentage of Vincent's retirement decreased from fifty percent to thirty-six percent.
¶ 19. The foregoing is important because it illustrates the fact that it was equitable for Sheila to continue to receive a portion of Vincent's retirement in this fashion; especially considering the fact that Sheila deferred receiving anything from Vincent's retirement for several years. Further, the amended QDRO was executed in April of 1997. It is entirely possible that Vincent did not fully understand the provisions of the amended QDRO. It is also entirely possible that the provisions of the amended QDRO were not fully explained to Vincent. However, if Vincent had any questions concerning the language of the amended QDRO, he certainly could have raised those questions before January of 2006. At the very least, such a conclusion could not be considered clearly erroneous or manifestly wrong. "The word `manifest', as defined in this context, means `unmistakable, clear, plain, or indisputable.'" Lowrey, 919 So.2d at 1118(¶ 21) (Miss.Ct.App.2005). We cannot find that the chancellor's decision was unmistakably or indisputably wrong.
¶ 20. In a separate argument, Vincent claims the chancellor erred when he did not find the division of retirement benefits portion of the property settlement agreement to be ambiguous. Having found that the chancellor did not err when he found Vincent's Rule 60(b) motion untimely, any discussion of ambiguity in the retirement provision is moot. Accordingly, there is no need to address that argument. Our standard of review requires that we defer to the chancellor's discretion. Because the *7 chancellor did not abuse his discretion, we affirm.
¶ 21. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.