MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. John and Angela Benal were granted a divorce based on irreconcilable differences by the Madison County Chancery Court. John and Angela submitted four issues for the trial court to resolve: (1) custody of their three children, (2) division of the marital assets, (3) liability for payment of the marital debts, and (4) use of the marital home and furnishings. Aggrieved by the chancellor’s ruling, John appeals and asserts three assignments of error: (1) the trial court committed error in evaluating the credibility of John and his witnesses; (2) the trial court erred in not granting John custody of his children; and (3) the trial court erred in finding that it lacked authority to order visitation. Finding error, we affirm in part and reverse and remand in part.
 

 FACTS
 

 ¶2. John and Angela were married in 1991 in Cedar County, Nebraska. They
 
 *372
 
 had three children during their marriage: Sarah, Katherine, and Erin. In April 2007, John moved to Ridgeland, Mississippi after he obtained a position with Cellular South. Angela and the three children remained in Nebraska until the end of the school year; they then followed John to Mississippi. The Benals bought a house in Ridgeland, and stayed together until John filed a complaint for divorce in December 2007 in the Madison County Chancery Court based upon habitual cruel and inhuman treatment and irreconcilable differences.
 

 ¶ 3. After being served with process, Angela took the three children and returned to Nebraska. She then filed a divorce action against John in Nebraska. However, the Nebraska court refused to hear Angela’s action due to the pending action in Madison County, Mississippi. Thereafter, John withdrew his complaint for a fault-based divorce, and John and Angela entered a complaint for divorce based upon irreconcilable differences. They submitted four issues to the trial court to determine: (1) custody of their three children, (2) division of the marital assets, (3) liability for payment of marital debts, and (4) use of the marital home and furnishings. After conducting a hearing in which John, his mother, his brother, and Angela testified, the chancellor awarded Angela sole physical and legal custody of the three children.
 

 STANDARD OF REVIEW
 

 ¶ 4. “[The appellate court] will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Chapel v. Chapel,
 
 876 So.2d 290, 292(¶ 8) (Miss.2004) (citations omitted). Under this standard of review, our purpose is to determine whether the chancellor’s ruling was supported by credible evidence, not whether we agree with that ruling.
 
 Lee v. Lee,
 
 798 So.2d 1284, 1290(¶ 22) (Miss.2001).
 

 DISCUSSION
 

 I. CUSTODY OF THE CHILDREN
 

 ¶ 5. “[T]he polestar consideration in child custody cases is the best interest and welfare of the child.”
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). In
 
 Albright,
 
 the Mississippi Supreme Court established a list of factors that a chancellor must consider when determining which parent should be awarded primary custody of a child. The factors used to determine the child’s best interests are: (1) age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare; (4) the employment of the parent and the responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 

 ¶ 6. John argues the chancellor erred in finding that the following factors favor Angela: (1) age, health, and sex of the children; (2) continuity of care; (3) home, school, and community record of the children; and (4) stability of the home environment. John also argues on appeal the chancellor erred when she found his parenting skills were only slightly favorable to Angela’s. Finally, John claims the chancellor erred in finding that the will and
 
 *373
 
 capacity to provide primary childcare and the responsibility of employment factors favored neither party.
 

 A. Age, Health, and Sex of the Children
 

 ¶ 7. The chancellor found that this factor favored Angela. John argues that the chancellor improperly applied the “tender years” doctrine, discriminated against him based upon his gender, and placed too much emphasis on the gender of the children. He argues that he is as equally qualified as Angela to raise their children.
 

 ¶ 8. “The tender years doctrine is a presumption that in all cases where any child is of such tender age as to require the mother’s care for [the child’s] physical welfare, [he or she] should be awarded to her custody, at least until [he or she] reaches that age and maturity where [the child] can be equally well cared for by other persons.”
 
 Gilliland v. Gilliland,
 
 969 So.2d 56, 66(¶ 32) (Miss.Ct.App.2007) (citation and internal quotations omitted). “The ‘tender years’ doctrine has not been completely abandoned by our court, but age is merely one factor to be considered in a best-interest analysis.”
 
 Masino v. Masino,
 
 829 So.2d 1267, 1271(¶ 15) (Miss.Ct.App.2002).
 

 ¶ 9. The supreme court has held that a child of seven years of age is long past the age prior to which he or she requires attention of such a character from the mother.
 
 Mayfield v. Mayfield,
 
 956 So.2d 337, 342(¶ 11) (Miss.Ct.App.2007). At the time of the hearing, John and Angela’s children were fourteen, eleven, and eight years old, making the “tender years” doctrine inapplicable.
 

 ¶ 10. Upon our review of the record, the chancellor did not apply the tender years doctrine. The chancellor does not mention the tender years doctrine anywhere in her opinion and final judgment. Moreover, we do not find the chancellor discriminated against John based upon his gender or placed too much emphasis on the gender of the children.
 

 ¶ 11. On the contrary, the chancellor cited
 
 Parker v. South,
 
 913 So.2d 339 (Miss.Ct.App.2005) as the basis for her decision. In
 
 Parker,
 
 a father was seeking custody of his nine-year-old son.
 
 Id.
 
 at 341(¶ 1). This Court found that a chancellor did not err in finding that the age, health, and sex factor in favor of the father based upon the implicit fact that “a young male will need the guidance and care of his father as he matures.”
 
 Id.
 
 at 348(¶ 29).
 

 ¶ 12. Similar to a son needing the guidance and care of his father as he matures, daughters will often need the guidance and care of their mothers as they mature.
 
 See id.
 
 Also, “there is still a presumption that a mother is generally better suited to raise a young child.”
 
 Passmore v. Passmore,
 
 820 So.2d 747, 750(¶ 9) (Miss.Ct.App.2002) (quoting
 
 Hollon v. Hollon,
 
 784 So.2d 943, 947(¶ 14) (Miss.2001)).
 

 ¶ 13. Additionally, in the case at bar, although not entered into evidence, there was testimony that two of the children had expressed their desire to live with Angela. Given their desire, coupled with the instruction that Mississippi courts should attempt to keep children together,
 
 [1]
 
 we do not find that the chancellor manifestly erred in weighing this factor in favor of Angela.
 

 B. Continuity of Care
 

 ¶ 14. John argues the chancellor erred when she found that this factor strongly favored Angela. John claims he provided
 
 *374
 
 continuous care for his children while they were living with him in Nebraska and Mississippi. He supports his argument by pointing out that he stayed in contact with his children after they moved back to Nebraska through telephone calls, e-mails, and Internet-chat sessions.
 

 ¶ 15. The chancellor found that Angela had been a more constant factor in the girls’ lives. Angela was a stay-at-home mother while the family resided in Nebraska. She was employed on two separate occasions in Nebraska with part-time jobs, one lasting from the time John was let-go from one job until he found employment elsewhere. When John moved to Mississippi, Amgela stayed with the children until their school year was completed. Moreover, since John and Angela’s separation, the children have resided with Angela in Nebraska. Accordingly, we do not find that the chancellor erred in weighing this factor strongly in favor of Angela.
 

 C. Parenting Skills
 

 ¶ 16. John argues the chancellor should have found that this factor strongly favored him, rather than only slightly favoring him. John claims he was more involved in his children’s sehoolwork and extracurricular activities than Angela. Additionally, he prepared most of the family’s dinners.
 

 ¶ 17. Angela admitted that John was very involved in the children’s lives. John testified that he helped and tutored his children regarding their sehoolwork, and he assisted them with their science projects. John also testified that he learned to play with Barbies and to have tea parties with his girls. John taught them how to play golf and referee football and basketball games. John claimed he was very involved in the parent-teacher association (PTA) and with his children’s teachers. Lastly, John testified that he did the majority of the disciplining in his house by denying and restricting the children’s access to television and the Internet.
 

 ¶ 18. Angela stated that John’s characterization, during his testimony, of his involvement was slightly exaggerated. While John may have attended a few PTA meetings, he was not an active member of the group. Additionally, Angela, and not John, prepared most of the family meals at night. Angela stated John’s involvement with the cooking was preparing breakfast on Saturday mornings and helping prepare meals and clean up on holidays and other family gatherings. Much like John, Angela ensured their children completed their homework, and she would quiz them periodically. While the family resided in Mississippi, Angela took two of the children to school each morning, and John took one.
 

 ¶ 19. Given that John was somewhat more involved in the children’s sehoolwork and their extracurricular activities, we find the chancellor did not err in weighing this factor slightly in favor of John.
 

 D. Willingness and Capacity to Provide Primary Care
 

 ¶ 20. John argues the chancellor erred in not weighing this factor in his favor. John had previously taught gifted children in the Nebraska public school system, which he argues, gives him the ability to help with his children’s sehoolwork better than Angela could. His house in Mississippi was much larger and more suitable for the children than Angela’s apartment in Nebraska. Lastly, John argues that he could better support his children financially than Angela.
 

 ¶ 21. We do not find the chancellor was erroneous in her finding that this factor favored neither parent. Both parents were employed at the time of the hearing. Both parents were petitioning
 
 *375
 
 the court for custody, which evidences a willingness to provide primary care. Moreover, both John’s and Angela’s extended families resided close to Angela’s apartment in Nebraska; neither parent’s family lived in Mississippi. Accordingly, we find that the chancellor did not err.
 

 E. Employment Responsibilities and Stability of Employment
 

 ¶22. John argues that the chancellor should have found that this factor weighed in his favor. John is currently employed as a project manager at Cellular South. He works from 8:00 a.m. to 5:00 p.m. each day, Monday through Friday, with weekends and all major holidays off from work. He testified that he thoroughly enjoys his job. To the contrary, Angela was only employed in temporary positions while the family resided in Nebraska. She did not work while the family was in Mississippi, and at the time of the hearing, she had been employed as a customer service representative for only a few months. This evidence, John argues, shows the chancellor was in error by finding this factor favored neither parent.
 

 ¶ 23. Angela testified that, while the family lived in Nebraska, John had several jobs. She also stated that she once worked in a temporary position when John was fired from a job, and she stayed in that temporary position until John was hired at another company. Angela also worked at another temporary job in Nebraska up until the time she moved to Mississippi. She testified that when she moved to Mississippi that John discouraged her from accepting a job offer with Comcast. Since Angela has returned to Nebraska, she has been working as a customer service representative.
 

 ¶ 24. Upon our review of the record, we find that the chancellor was correct in holding that this factor favored neither party. The evidence showed that both parents have held a variety of jobs, some longer than others. While John’s current job is a higher paying and more stable position, Angela stated that her job allows her to be home shortly after the children arrive home from school. Therefore, we find the chancellor did not err in weighing this in favor of neither parent.
 

 F. Home, School, Community Record of the Children
 

 ¶ 25. John argues the chancellor erred in weighing this factor strongly in favor of Angela. He argues this factor should have been weighed in his favor; the children were making excellent grades in Mississippi, involved in extracurricular activities, and making new friends. Moreover, John claims that his house in Mississippi is more conducive to the children because it has a swimming pool, and each child had her own room, while Angela is living in an apartment in Nebraska. John also points out that Angela’s two brothers, who visited their home in Nebraska for special occasions, were both charged with sex-related crimes, which led to one conviction. Lastly, John argues he ensured that his children attended church and encouraged them to become involved in church youth groups.
 

 ¶ 26. Prior to the family moving to Mississippi, the family had lived in Nebraska for ten years. The children made excellent grades in school while in Nebraska, and they were involved in extracurricular activities. There was testimony that Sarah, the oldest child, was having trouble adjusting to her new school and community in Mississippi. Additionally, John’s and Angela’s parents and relatives live in or near Nebraska, which could provide a support group if needed. There was no evidence presented that John or Angela had any relatives near Mississippi. There was
 
 *376
 
 also evidence that the children were involved in a church in Nebraska, with Erin, the youngest child, having her first communion in Nebraska after John and Angela’s separation.
 

 ¶ 27. Because the children had lived in Nebraska for ten years prior to them moving to Mississippi, where they had stayed for approximately six months, and John and Angela both had parents and relatives in or near their home in Nebraska, we find the chancellor did not err in finding this factor strongly favored Angela.
 

 G. Stability of the Home Environment
 

 ¶ 28. The chancellor found that this factor weighed in favor of Angela based on the fact that John’s ties to the community in Mississippi are minimal, while Angela had her relatives as well as the connections she had made in the ten years she had lived in Nebraska. John argues that his home is more stable than Angela’s, and the chancellor should have awarded him this factor.
 

 ¶ 29. John claims the chancellor was in error in finding that his ties to the community were minimal. He testified that he loved his community, his job, and was very active in his church. John again points to Angela brothers’ criminal problems to support his argument, claiming that her brothers pose a threat to the children.
 

 ¶ 30. Contrary to John’s assertions, Angela testified that John only occasionally attended church with the family while they lived in Mississippi. Angela also testified about two troubling episodes. In November 2006, John threatened to kill himself with a knife in front of the children. After a neighbor called 911, John was taken to the mental ward at a local hospital for treatment. Angela also testified that, after the couple had an argument, John went to their basement and placed a gun to his head. John stopped when Sarah came down to the basement. Angela was not sure if Sarah had seen John with the gun to his head.
 

 ¶ 31. There was no evidence presented that called into question the stability of Angela’s home. Accordingly, we find that the chancellor did not err in finding this factor favored Angela. This issue is without merit.
 
 [2]
 

 II. CREDIBILITY OF JOHN AND HIS WITNESSES
 

 ¶ 32. John argues the trial court erred in discounting his testimony and the testimonies of his mother and brother that John was the primary caretaker of the children. The chancellor found that John’s statements, along with his mother’s and brother’s statements that John “did absolutely everything for the family while Angela made no contributions, raised suspicions as to their credibility.” John claims this finding is not supported by substantial evidence.
 

 ¶ 33. “As the sole trier of fact, the chancellor determines the credibility of the witnesses and what weight to give to the evidence.”
 
 Griffith v. Griffith,
 
 997 So.2d 218, 223(¶ 17) (Miss.Ct.App.2008). Given our deferential standard of review provided to a chancellor’s determination of the credibility of the witnesses, and based on our review of the facts in this case, we find that this issue lacks merit.
 

 III. AUTHORITY TO ORDER VISITATION
 

 ¶ 34. The chancellor found that she lacked the authority to order specific visitation because it was not an issue that was submitted to the court by the parties for
 
 *377
 
 determination. The trial court stated that it could “only decide issues jointly submitted unto it.”
 

 ¶ 35. John argues the trial court erred in not ordering a specific visitation schedule. As stated above, John and Angela submitted the issue of custody to the court for it to decide. John argues that in requesting the trial court to determine custody, he and Angela were implicitly requesting the trial court to order specific visitation.
 

 ¶ 36. Pursuant to Mississippi Code Annotated section 93-5-2(3) (Supp.2008), the trial court must review a separation agreement and find it to be “adequate and sufficient” with regard to the custody and maintenance of any child and the property rights between the parties.
 

 ¶ 37. In
 
 Lowrey v. Lowrey,
 
 919 So.2d 1112 (Miss.Ct.App.2005), this Court addressed whether a separation agreement was adequate and sufficient under the statute. Relevant to the issue at hand, the separation agreement in
 
 Lowrey
 
 provided that, the husband would be awarded legal and physical custody of the children, his wife would receive “reasonable visitation rights with the minor children conditioned on reasonable time line notice of 48 hours” to the husband, and the wife would receive “further visitation rights with the minor children as may be reasonable under all relevant circumstances, and which may be agreed upon” by the parents.
 
 Id.
 
 at 1115(¶ 6) (internal quotation omitted). Upon reviewing the separation agreement, this Court found that the separation agreement was not adequate and sufficient under Mississippi Code Annotated section 93-5-2 because it provided the children no specific visitation period with their mother, formerly the primary caregiver of the children, and thus “was not in the best interest of the children.”
 
 Id.
 
 at 1120(¶ 32).
 

 ¶ 38. Turning to the case at hand, we find the chancellor erred in not ordering a specific visitation schedule. Although Mississippi Code Annotated section 93-5-2 does not explicitly state that visitation must be agreed upon by the parties or adjudicated by the court before an irreconcilable differences divorce is granted, we find that it is implicit in the statute’s language that visitation must be addressed if the issue of custody is submitted to the trial court for resolution.
 

 ¶ 39. Additionally, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) defines “child custody determination” as “a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child.” Miss.Code Ann. § 93-27-102(c)(Rev.2004). While Mississippi has not expounded on this definition, other states have interrupted this language. The Texas Court of Appeals has stated that, under the UCCJEA, “child custody determination” means “custody of a child, including visitation rights.”
 
 Coots v. Leonard,
 
 959 S.W.2d 299, 302 (Tex.Ct.App.1997).
 

 ¶ 40. It only seems logical that when a court grants custody to one parent, they must address whether the non-custodial parent gets visitation and to what extent. Accordingly, we reverse the chancellor’s judgment and remand this case with instructions that the trial court order a specific visitation schedule.
 

 ¶ 41. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
 

 
 *378
 
 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .
 
 See Owens v. Owens,
 
 950 So.2d 202, 207(¶ 15) (Miss.Ct.App.2006).
 

 [2]
 

 . John does not challenge the chancellor’s finding on the remaining
 
 Albright
 
 factors.