FAIR, J.,
for the Court:
¶ 1. Joe and Marsha Pecanty were divorced on the ground of Joe’s adultery. Joe appeals, arguing the chancellor erred in (1) classifying marital and separate property, (2) dividing marital property, and (3) awarding lump-sum and rehabilitative alimony. Finding the chancellor’s decision was supported by the evidence and the correct standards were applied, we affirm.
FACTS
¶ 2. This is a second marriage for both Joe, 49, and Marsha, 41. Each had two children when they married in March 2000.
¶ 3. When they married, Marsha was a medical-records clerk. In his brief Joe stated that the parties agreed “Marsha would quit work because Joe provided enough money for the family to live on with Joe’s job.” She became a full-time homemaker, caring for three of their children until emancipation and Joe’s niece on occasion when she stayed in their home. Marsha handled the family finances from their joint account.
¶ 4. Joe and Marsha had attempted to buy a home first, but were denied a loan because of their bad credit. Linda Ivy, Marsha’s mother, purchased the house, making a down payment of $2,226.20, and financing the balance with monthly payments of $558.60. Marsha and her mother both testified Linda bought it for rental and rented it to Joe and Marsha for $500 per month. When the house was damaged by Hurricane Gustav, Joe supervised repairs with Linda’s insurance proceeds. He directed changes to the structure and added fixtures, “without the permission or approval of Linda.” Joe argues that Linda bought the house for Marsha and him, and it was to be transferred to them when their financial and credit circumstances improved.
¶ 5. Joe and Marsha’s payments were placed in Linda’s personal bank account, from which she paid the monthly note. According to Linda, there never was any agreement for transfer to Joe and Marsha. Their rental agreement was month-to-month and not in writing. Joe’s brother and sister-in-law testified they heard discussions between Linda and the Pecantys about the house belonging to Joe and Marsha and that it was purchased in Linda’s name because of the Pecantys’ bad credit.
¶ 6. Before marrying Joe, Marsha had acquired a Louisiana barber’s license. She was working at Vicksburg Clinic until she married and quit at Joe’s behest. Accord *1265 ing to Joe, they “lived comfortably and enjoyed life.” He stated he “was a good provider and left Marsha to handle the finances.” Through Marsha’s efforts, Joe’s credit score rose to close to 800. Joe’s IRA, worth $20,547 when they married, rose by $42,399 during the marriage to total $62,800 at the time of the divorce.
¶ 7. Joe worked in the oil patch during the marriage, two weeks on and two weeks off. In 2006, he changed employers and transferred his retirement account to a local broker. His Uniform Chancery Court Rule 8.05 disclosures reflect a take-home monthly income of $3,897.96. Marsha made about $300 per month cleaning houses. She also received $208 per month from her first husband.
¶ 8. In March 2010, Marsha filed for divorce on the ground of Joe’s adultery, which he readily admitted had occurred during their marriage and continued after separation. Joe counterclaimed, asserting Marsha’s adultery, which she admitted had occurred on a trip to Hawaii about a month before trial.
¶ 9. After trial, the chancellor rendered a thirty-nine page opinion and judgment. Joe appeals, asserting:
1. The chancellor did not consider the marital home of the parties as subject to equitable distribution.
2. The chancellor did not equitably distribute the marital assets and erred in awarding both rehabilitative alimony and lump-sum alimony.
STANDARD OF REVIEW
¶ 10. This Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Benal v. Benal, 22 So.3d 369, 372 (¶ 4) (Miss.Ct.App.2009) (quoting Chapel v. Chapel, 876 So.2d 290, 292 (¶ 8) (Miss.2004)). If the chancellor’s findings are supported by substantial evidence, then we will affirm. Minter v. Minter, 29 So.3d 840, 850 (¶ 36) (Miss.Ct.App.2009).
DISCUSSION
1. Classification of the Marital Home
¶ 11. Joe disputes the chancellor’s finding that the house in which he and Marsha lived belongs to his mother-in-law, Linda. He claims it was in reality his and Marsha’s marital home and should be classified as marital, valued under Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), and equitably divided under Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). He and Marsha stipulated the equity in the home was $13,455 so the sole issue is whether it was a marital asset.
¶ 12. Since title was in Linda’s name and she was not a party to this proceeding, the chancellor found she had no jurisdiction to award the property to either Joe or Marsha. See Skinner v. Skinner, 509 So.2d 867, 870 (Miss.1987). Nevertheless, the chancellor addressed Joe’s claims of the property’s marital status. Her factual decision that the property was rental in nature, owned by Linda outright and not held in trust for the parties, was well within her discretion. She further noted that “no documented evidence was presented to support Mr. Pecanty’s position,” and held that “[wjithout proper evidence, this Court has no choice but to find that [the home] is not a marital asset.”
¶ 13. Classification of property under Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), usually involves two categories, “marital” and “separate.” The house in this case was ultimately neither, since it was found to be owned by someone other than the parties. It is not subject to consideration in the overall division of proper *1266 ty and award of alimony. The only separate property was Joe’s premarital $20,547.27 retirement-fund equity and a $150 rifle.
2. Equitable Distribution
¶ 14. Joe contends that the chancellor erred in distributing marital property because her division was “unfair and inequitable.”
¶ 15. The marital property subject to division was listed in detail, and the parties stipulated to its value, which totaled $73,696.02. After discussing the Ferguson factors for distribution of marital property, the chancellor awarded items worth $80,435.97 to Marsha and items worth $43,260.03 to Joe. See Ferguson, 639 So.2d at 928. All eight factors were discussed in detail, and specific factual findings were made relating to each factor.
¶ 16. “We have repeatedly held that in making an equitable division of the marital property, the chancellor is not required to divide the property equally.” Love v. Love, 687 So.2d 1229, 1232 (Miss.1997). “Our purpose is to determine whether the chancellor’s ruling was supported by credible evidence, not whether we agree with that ruling.” Benal, 22 So.3d at 372 (¶ 4) (citing Lee v. Lee, 798 So.2d 1284, 1290 (¶ 22) (Miss.2001)). The greater award to Joe does not necessarily indicate an abuse of discretion. See Bresnahan v. Bresnahan, 818 So.2d 1113, 1122 (¶31) (Miss.2002).
¶ 17. We find that the chancellor’s division of marital assets is supported by substantial evidence and that she did not apply an erroneous legal standard.
3. Alimony
¶ 18. Finally, Joe asserts, the chancellor erred in awarding lump-sum and rehabilitative alimony.
¶ 19. The Mississippi Supreme Court has emphasized that there are three types of alimony: rehabilitative, lump sum, and periodic. Awarding one or more of these types fits into an overall reallocation of marital assets. This overall approach encompasses equitable division of marital property, the parties’ separate property, child support (not present in this case), and possible alimony. Alimony should be considered for a party facing a deficit after consideration of income available after equitable division.
¶ 20. Here, the chancellor reviewed the factors set out in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), to determine Marsha’s need and Joe’s ability to pay support. Marsha’s adjusted gross income (AGI) was determined to be $528.20 per month. Her monthly expenses, including all insurance, retirement contributions, and installment payments, totaled $1,831.[1] Without alimony, Marsha had a monthly deficit of $1,302.80.
¶21. Joe’s AGI was determined to be $3,897.96 per month. His expenses totaled $2,330, leaving him a monthly surplus of $1,015.96.
¶ 22. If the divided assets, when considered with each party’s non-marital assets, “will adequately provide for both parties, no more need be done.” Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). “A wife is generally entitled to periodic alimony when her income is inadequate to allow her to maintain her standard of living and when her husband is able to pay.” Kilpatrick v. Kilpatrick, 732 So.2d 876, 882 (¶ 4) (Miss.1999) (citing Heigle v. Heigle, 654 So.2d 895, 898 (Miss.1995)). Without alimony, Marsha will suffer a disparity in income and a decline in her standard of living following the equitable division of *1267 marital assets. See Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss.2003).
¶ 23. The chancellor next discussed the four factors set out in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988), to determine whether lump-sum alimony and/or rehabilitative alimony should be considered, in lieu of periodic alimony with its potential for creating a permanent state of friction between divorcing spouses.
¶ 24. The chancellor awarded lump sum alimony of $29,049.03, reflecting the balance remaining on the vehicle awarded to Marsha in the property division. The award could be paid in installments as payments on the vehicle came due.
¶ 25. Finally the chancellor considered rehabilitative alimony, defined as “an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.” Hubbard v. Hubbard, 656 So.2d 124,130 (Miss.1995). She emphasized that rehabilitative alimony is not an equalizer of assets as lump sum alimony may be, but a fresh start as described in Hubbard. Id. In deciding to award rehabilitative alimony to Marsha of $500 per month for sixty months, the chancellor addressed the seventeen factors set out in Davis v. Davis, 832 So.2d 492, 497 (¶ 19) (Miss.2002). Her decision is supported by substantial evidence and was within her discretion.
¶ 26. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

. Monthly notes on a car bought after separation were not included.