GROSS, C.J.
 

 This case pits a judgment creditor against appellant’s claim of a security interest in a cash bond that was deposited with the clerk of the court. Finding no perfected security interest in the cash bond, we affirm the judgment in favor of the judgment creditor. We also reject the claim that appellant was deprived of his right to a jury trial, because its participation in a non-jury trial amounted to a waiver.
 

 In August, 2001, Merrill Lynch Business Financial Services filed a Uniform Commercial Code Financing Statement with the State of Florida. The statement listed Merrill Lynch as the secured party and Tricorn Pictures & Productions as the debtor of “a certain Loan Agreement.” Additionally, the statement stated that it covered the following “types or items of property”
 
 [1]
 
 :
 

 All Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Debt- or, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with ... all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds).
 

 In April, 2006, Merrill Lynch assigned all of its interest in the security agreement to appellant, Charlotte Development Partners, LLC.
 

 
 *692
 
 In October, 2005, General Electric Capital Corporation obtained a final judgment against Tricorn for $113,002.06.
 

 In late 2007, Patricia Klein, an attorney who had represented Tricorn, received $10,000 from the court registry operated by the clerk of the circuit court. That money was from a bond that Tricorn had posted
 
 [2]
 
 in an unrelated 2001 case in which Tricorn was the plaintiff. The clerk returned the bond money to the attorney of record because the case was dismissed.
 

 Klein prepared a notice and sent it to creditors of Tricorn. The notice indicated that she had recently received $10,000 on behalf of Tricorn from the clerk as a result of the dismissal of the 2001 case. The notice stated:
 

 Florida Law dictates that a perfected security interest has priority and as such, the enclosed UCC Financing Statement, dated August 8, 2001, appears to have priority. As such, this office shall transmit ... $10,000 from its trust fund to Charlotte Development Partners, LLC, forty-five (45) days from today’s date, unless directed otherwise by a court of competent jurisdiction.
 

 Anyone who feels they have a superior interest to Charlotte ... should promptly adjudicate such issue in their respective courts and take whatever action they deem appropriate. As such, unless this office receives a contrary directive from an appropriate court of law, said disbursement will take place on December 16, 2007.
 

 In response to Klein’s notice, GE Capital instituted garnishment proceedings against Klein. Charlotte Development sought to intervene in the garnishment to protect its interest deriving from the 2001 security agreement.
 

 The circuit court held a hearing on the motions to intervene and to determine priority of claims. At the beginning of the hearing, Charlotte Development said that it was not waiving any of its “rights under Statute 77.16,” which governs “[cjlaims by third persons to garnished property.”
 
 See
 
 § 77.16, Fla. Stat. (2008). The court granted the motion to intervene and said, “fNjow we are going to get to the merits.” Without objection or hesitation, the parties began to address the issue of the priority of interests. Patricia Klein testified. She was examined and cross-examined. The court invited argument “on who is entitled to the $10,000.” Charlotte Development made its pitch and GE Capital responded. The hearing evolved into a discussion between the parties, the court, and Klein. At the end of the interchange, the court stated, “[N]o one has traced [the money] back to a collateral that [Charlotte Development has] a secured interest [in].”
 

 At this point, over one hour after the hearing began, Charlotte Development reminded the court that it did not “waive any rights under Florida Statute 77.16” and explained in the “interest of judicial economy [it] wanted to resolve this today.” But then the attorney said that he had not waived a jury and that if GE Capital “would like to come back for a jury trial, if [the court] need[s] more information, let’s set a jury trial.”
 

 The court ruled that Charlotte Development, by its conduct, had waived its right to a jury trial and that GE Capital’s interest in the $10,000 was superior to that of Charlotte Development.
 

 
 *693
 
 We agree with the circuit judge that Charlotte Development waived its right to a jury trial. At the beginning of the hearing, Charlotte Development’s attorney obliquely mentioned his client’s “rights under section 77.16,” but said nothing about a jury trial, which would have been an unusual request in a garnishment proceeding involving $10,000. Both parties jumped at the court’s invitation to expeditiously resolve the case on the merits. After an hour, when Charlotte Development perceived that its case was proceeding poorly, it fell back on section 77.16 to extricate itself from an unfavorable decision. A party seeking a jury trial cannot so dip its toe into a non-jury trial and test the judicial waters without waiving the right to have a jury decide the case. Section 77.16(1) contemplates that a jury may be waived. Here, Charlotte Development waived a jury trial by its acquiescence to the non-jury trial.
 
 See Del-Rena, Inc. v. KFM, Inc.,
 
 789 So.2d 397, 398-99 (Fla. 4th DCA 2001);
 
 Schreiber v. Schreiber,
 
 795 So.2d 1054, 1059 (Fla. 4th DCA 2001).
 

 We affirm the circuit court’s decision that GE Capital was entitled to the $10,000. The description of collateral in the security agreement was insufficient to create a security interest in the cash bond. GE Capital’s judgment lien was superior to the unperfected security interest.
 
 See
 
 § 679.3171(l)(b)l., Fla. Stat. (2008).
 

 One of the requirements of creating a security interest enforceable against a debtor and third parties with respect to given collateral is that “[t]he debtor has authenticated a security agreement that provides a description of the collateral.” § 679.2031(2)(c)l., Fla. Stat. (2008). Section 679.1081, Florida Statutes (2008), controls the sufficiency of description of collateral and provides in pertinent part:
 

 (1)Except as otherwise provided herein and in subsections (3), (4), and
 

 (5), a description of personal ... property is sufficient, whether or not it is specific, if it reasonably identifies what is described....
 

 (2) Except as otherwise provided in subsection (4), a description of collateral reasonably identifies the collateral if it identifies the collateral by:
 

 (a) Specific listing;
 

 (b) Category;
 

 (c) Except as otherwise provided in subsection (5), a type of collateral defined in the Uniform Commercial Code;
 

 (d) Quantity;
 

 (e) Computational or allocational formula or procedure; or
 

 (f) Except as otherwise provided in subsection (3), any other method, if the identity of the collateral is objectively determinable.
 

 (3) A description of collateral as “all the debtor’s assets” or “all the debtor’s personal property” or using words of similar import does not reasonably identify the collateral for purposes of the security agreement.
 

 The parties described covered collateral by using terms contained in the Uniform Commercial Code. The cash bond does not fall under any of the categories of collateral described in the security agreement. The cash bond was not an “account” within the meaning of section 679.1021(l)(b), Florida Statutes (2008), in that it was not a “right to payment” arising under the circumstances identified in the statute. The term “account” does not include a right to payment for “money or funds advanced,” which could well describe a cash bond.
 
 Id.
 
 The cash bond was not a “general intangible,” because the definition excludes “money.” § 679.1021(l)(pp), Fla. Stat. (2008). It was not a “deposit account” because it was not “maintained with a bank.” § 679.1021(l)(cc), Fla. Stat. (2008).
 

 
 *694
 
 Finally, the cash bond was not a “financial asset” within the meaning of the Code. Under the Code, a “financial asset” is a security; an obligation, share, participation, or other interest “traded on financial markets” or used “as a medium for investment”; or any property held in a securities account by a securities intermediary on behalf of someone else that they have agreed to treat as a financial asset. § 678.1021(1)©, Fla. Stat. (2008).
 
 [3]
 
 The bond was obviously not a security,
 
 see
 
 § 678.1021(l)(o), Fla. Stat. (2008), and was not traded on financial markets or used for investment.
 

 The definition of collateral is broad, and the list provided in section 679.1021(1)(Z) is not exclusive. While the parties might have been able to create a security interest in the cash bond by using a more specific description, they failed to do so in this case.
 

 In the circuit court, the parties argued that the cash bond could be categorized as “money.” Assuming that such a classification is correct, “[a] security interest in money may be perfected only by the secured party’s taking possession under s. 679.3131.” § 679.3121(2)(c), Fla. Stat. (2008).
 
 [4]
 
 While the money was in the possession of the clerk it was not in the possession of Charlotte Development. Attorney Klein’s subsequent receipt of the money was not tantamount to Charlotte Development taking possession of the collateral under section 679.3131(3), Florida Statutes (2008). Attorney Klein received the money from the clerk as the attorney, or agent, of the debtor Tricorn.
 
 See Richard Bertram, Inc. v. Sterling Bank & Trust,
 
 820 So.2d 963, 966 (Fla. 4th DCA 2002). The attorney was “so closely connected to the debtor that the debtor in reality retain[ed] effective possession.... [Possession by such a closely connected third person could not constitute secured party possession, and would not be sufficient for perfection.” White & Summers,
 
 Uniform Commercial Code
 
 § 31-8 (5th ed. 2002).
 

 Because Charlotte Development demonstrated no perfected security interest in the cash bond, GE Capital’s judgment lien controlled the distribution in this case.
 

 Affirmed.
 

 TAYLOR and HAZOURI, JJ., concur.
 

 [1]
 

 . As did the parties in the circuit court, we assume that the description of the collateral in the financing statement was the same as the description in the security agreement. No security agreement was produced or authenticated, and appellee. General Electric Capital, did not object. See § 679.203l(2)(c), Fla. Stat. (2008). Also, the parties tried the case as if a proper continuation statement had been filed.
 
 See
 
 § 679.515(1), (3), (4), Fla. Stat. (2008).
 

 [2]
 

 . For the purpose of this opinion, we assume that an outside entity, Sundown Capital, posted Tricorn’s funds in the court registry. This fact was the subject of some dispute below, but we do not find it to be legally significant.
 

 [3]
 

 . Section 679.1021(2), Florida Statutes (2008), makes this definition applicable to UCC Article 9.
 

 [4]
 

 . At the hearing below, the parties discussed the applicability of section 679.312l(2)(c) to this case.